UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD MATTHEWS,

    Petitioner,

v.                                                Case No. 2:10-cv-142
                                                HON. GORDON J. QUIST

JEFFREY WOODS,

    Respondent.
_____/

# REPORT AND RECOMMENDATION

Petitioner Richard Matthews filed this petition for writ of habeas corpus challenging his conviction for two counts of criminal sexual conduct. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. The petition asserts:

> I. Petitioner was denied his Fifth and Fourteenth Amendment rights to a fair trial when prosecutor elicited comment from the arresting police officer that Petitioner told the officer to talk to his lawyer.
>
> II. Ineffective assistance of counsel for failing to investigate and interview witnesses.
>
> III. Ineffective assistance of counsel for failure to object to prosecutor questions regarding Petitioner's statement that the arresting officer should talk to Petitioner's lawyer.
>
> IV. Ineffective assistance of counsel at sentencing for failing to allow Petitioner to review the pre-sentence report, or to correct inaccuracies in the report that were relied upon by the trial court in sentencing.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that the prosecutor elicited a statement from the arresting police officer that Petitioner gave the officer his attorney's business card and indicated that the officer should speak to Petitioner's attorney. Respondent argues that Petitioner procedurally defaulted this

issue. The Michigan Court of Appeals reviewed this issue under a plain error standard. The court stated:

> Defendant first argues that he was denied a fair trial when the prosecutor improperly elicited testimony from a police witness concerning defendant's decision to assert his Fifth Amendment right to remain silent:
>
> Q: And where did you first meet Mr. Matthews?
>
> A: I first physically met him at his mother's residence.
>
> Q: And why did you go to his mother's residence?
>
> A: To interview him and to arrest him.
>
> * * *
>
> Q: Did you have the opportunity to question Mr. Matthews?
>
> A: Upon knocking on the door, Mr. Matthews answered the door. I explained who I was and that I'd like to speak with him and at that time he handed me a business card for an attorney and said that he hired an attorney and did not wish to speak with me.
>
> Q: Now can you identify the individual that identified himself as Mr. Matthews on the day that you went to his mother's house?
>
> Because defendant did not object to the testimony, the issue is not preserved for appellate review. This Court reviews unpreserved issues for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain error rule, the defendant must show (1) that error occurred, (2) the error was plain, and (3) the plain error affected substantial rights. Even if all three requirements are met, reversal is warranted only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*.
>
> Evidence of a defendant's silence in the face of accusations cannot be admitted as substantive evidence to support the assertion that

> defendant tacitly admitted the truth of an allegation or made an admission. *People v Greenwood*, 209 Mich App 470, 472-473; 531 NW2d 771 (1995). The evidence of defendant's silence in the face of accusation in this case was not offered to show that defendant adopted the truth of the accusation. Rather, the subsequent questions by the prosecutor demonstrate that he was attempting to procure an in-court identification from the officer. At the hearing on defendant's motion for new trial, the trial court also agreed that the prosecutor was attempting to identify defendant and that the poorly worded question and answer surprised both attorneys. It is unlikely that the officer's response to the question was anticipated by the prosecutor, as shown by the fact that the prosecutor did not ask further questions regarding the officer's contact with defendant.
>
> Even if it were error to admit the testimony concerning defendant's refusal to speak with the officer, defendant has failed to meet his burden of showing that the error affected his substantial rights. The prosecutor did not emphasize or otherwise make use of the improper testimony and any minimal prejudice likely did not influence the jury, which ultimately acquitted defendant of one count of CSC-1. Therefore, any error in this regard does not warrant relief. *Carines, supra* at 763.

Michigan Court of Appeal's Opinion, docket #19, at 1-2.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir.

2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

After expressly noting Petitioner's default in failing to object, the Michigan Court of Appeals then reviewed Petitioner's claim for plain error, finding none. In this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *see also Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (claim is defaulted even where the state court may excuse the default for "manifest injustice"); *Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at *3-*4 (6th Cir. Nov. 2, 1994) (same, for "miscarriage of justice").

Petitioner may show cause by establishing that his counsel erred by failing to object to the prosecutor's question. The Michigan Court of Appeals rejected that counsel made an error on this issue concluding:

> At the hearing on defendant's motion for a new trial, defense counsel testified that he chose not to object to the officer's testimony regarding defendant's silence because he did not want to give the testimony undue weight, but would have objected if the matter were brought up again. Defendant has failed to overcome the strong presumption that trial counsel's failure to object was a matter of trial strategy: there are times at trial when it is better not to object and draw attention to an improper comment. *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). And we will not substitute our judgment for that of defendant's trial counsel on matters of trial strategy. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008).

Michigan Court of Appeal's Opinion, docket #19, at 3.

In the opinion of the undersigned, counsel's decision to not object to the question and testimony was not unreasonable based upon trial strategy.[1] Since, counsel acted in a reasonable manner, Petitioner is unable to show cause for the procedural default. In the opinion of the undersigned, this issue should be dismissed.

Petitioner's remaining claims involve ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the

---

[1] Petitioner raises the failure to object to the testimony and question as a separate ineffective assistance of counsel claim. However, it is the opinion of the undersigned that Petitioner cannot show ineffective assistance of counsel on this claim and the Michigan Court of Appeals' decision on this issue was not unreasonable.

defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The Michigan Court of Appeals rejected Petitioner's claim that counsel erred in investigating the case and interviewing witnesses:

> Defendant submits that another daughter, the sister of the victim, would have testified that defendant never molested her and that the charges levied by the victim were false. The victim's sister testified that no attorney ever contacted or interviewed her for this case and that she would have been willing to testify on defendant's behalf.
>
> Defendant's trial counsel indicated that he deliberately chose not to use the younger daughter at trial. Based on conversations with the investigating officer and defendant, defense counsel deemed the sister to be an unreliable witness who would likely open the door to admission of defendant's prior CSC and felonious assault convictions if, as likely, she testified that defendant would never hurt anybody and was a peaceful man. Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). In addition, regard should be given to trial court's special opportunity to judge the credibility of the witnesses who

> appeared before it. See *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008). Based on her testimony at the hearing, the trial court characterized the witness as a "loose cannon" and found that defense counsel's decision not to call the victim's sister was wise. The trial court explained: "She would have opened up the door. She would have said things she should not have said. She would have probably insured a verdict of guilty even then possibly on all three counts." Hence, the decision not to utilize this witness at trial was based on valid considerations of trial strategy and cannot support a claim for ineffective assistance.
>
> Defendant also submits that a neighbor would have testified at trial that she witnessed the victim accuse defendant of raping her and then retract the accusation. According to the neighbor, the victim explained that she made the accusation because she was mad at defendant.
>
> From defense counsel's affidavit, it is clear that he investigated the neighbor because he indicated that he intended to call her as a witness if the victim denied that she recanted her earlier allegation of sexual abuse. However, the victim testified that she made an accusation and then recanted, but explained that she did so because defendant threatened to kill her mom and threatened to lie about the abuse and send the victim to prison. Defense counsel believed it would be too damaging to defendant's case for the neighbor to testify because it might have given the prosecution an opportunity to repeat the damaging reason for the victim's recantation before the jury, i.e., defendant threatened to kill her mother and put her in jail. In addition, as with the victim's sister, defense counsel was aware that this neighbor was also an ardent supporter of defendant and any misstep on the witness stand would have likely opened the door to the admission of defendant's prior convictions, which were otherwise inadmissible. Again, we will not review questions of trial strategy with the benefit of hindsight. *Dixon, supra* at 398. Defendant has not shown that his trial counsel was ineffective for not calling the neighbor to testify on his behalf of defendant at trial.

Michigan Court of Appeal's Opinion, docket #19, at 3-4.

Contrary to Petitioner's claim, this is not a simple issue of failure to investigate and interview witnesses. Counsel made a clear decision based upon trial strategy. Petitioner cannot show ineffective assistance of counsel on this issue. The Michigan Court of Appeals' decision did

> appeared before it. See *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008). Based on her testimony at the hearing, the trial court characterized the witness as a "loose cannon" and found that defense counsel's decision not to call the victim's sister was wise. The trial court explained: "She would have opened up the door. She would have said things she should not have said. She would have probably insured a verdict of guilty even then possibly on all three counts." Hence, the decision not to utilize this witness at trial was based on valid considerations of trial strategy and cannot support a claim for ineffective assistance.
>
> Defendant also submits that a neighbor would have testified at trial that she witnessed the victim accuse defendant of raping her and then retract the accusation. According to the neighbor, the victim explained that she made the accusation because she was mad at defendant.
>
> From defense counsel's affidavit, it is clear that he investigated the neighbor because he indicated that he intended to call her as a witness if the victim denied that she recanted her earlier allegation of sexual abuse. However, the victim testified that she made an accusation and then recanted, but explained that she did so because defendant threatened to kill her mom and threatened to lie about the abuse and send the victim to prison. Defense counsel believed it would be too damaging to defendant's case for the neighbor to testify because it might have given the prosecution an opportunity to repeat the damaging reason for the victim's recantation before the jury, i.e., defendant threatened to kill her mother and put her in jail. In addition, as with the victim's sister, defense counsel was aware that this neighbor was also an ardent supporter of defendant and any misstep on the witness stand would have likely opened the door to the admission of defendant's prior convictions, which were otherwise inadmissible. Again, we will not review questions of trial strategy with the benefit of hindsight. *Dixon, supra* at 398. Defendant has not shown that his trial counsel was ineffective for not calling the neighbor to testify on his behalf of defendant at trial.

Michigan Court of Appeal's Opinion, docket #19, at 3-4.

Contrary to Petitioner's claim, this is not a simple issue of failure to investigate and interview witnesses. Counsel made a clear decision based upon trial strategy. Petitioner cannot show ineffective assistance of counsel on this issue. The Michigan Court of Appeals' decision did

> appeared before it. See *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008). Based on her testimony at the hearing, the trial court characterized the witness as a "loose cannon" and found that defense counsel's decision not to call the victim's sister was wise. The trial court explained: "She would have opened up the door. She would have said things she should not have said. She would have probably insured a verdict of guilty even then possibly on all three counts." Hence, the decision not to utilize this witness at trial was based on valid considerations of trial strategy and cannot support a claim for ineffective assistance.
>
> Defendant also submits that a neighbor would have testified at trial that she witnessed the victim accuse defendant of raping her and then retract the accusation. According to the neighbor, the victim explained that she made the accusation because she was mad at defendant.
>
> From defense counsel's affidavit, it is clear that he investigated the neighbor because he indicated that he intended to call her as a witness if the victim denied that she recanted her earlier allegation of sexual abuse. However, the victim testified that she made an accusation and then recanted, but explained that she did so because defendant threatened to kill her mom and threatened to lie about the abuse and send the victim to prison. Defense counsel believed it would be too damaging to defendant's case for the neighbor to testify because it might have given the prosecution an opportunity to repeat the damaging reason for the victim's recantation before the jury, i.e., defendant threatened to kill her mother and put her in jail. In addition, as with the victim's sister, defense counsel was aware that this neighbor was also an ardent supporter of defendant and any misstep on the witness stand would have likely opened the door to the admission of defendant's prior convictions, which were otherwise inadmissible. Again, we will not review questions of trial strategy with the benefit of hindsight. *Dixon, supra* at 398. Defendant has not shown that his trial counsel was ineffective for not calling the neighbor to testify on his behalf of defendant at trial.

Michigan Court of Appeal's Opinion, docket #19, at 3-4.

Contrary to Petitioner's claim, this is not a simple issue of failure to investigate and interview witnesses. Counsel made a clear decision based upon trial strategy. Petitioner cannot show ineffective assistance of counsel on this issue. The Michigan Court of Appeals' decision did

not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserts that he received ineffective assistance of counsel during sentencing because he was denied the opportunity to see the pre-sentence report and the court sentenced Petitioner based on uncharged conduct. The trial court and Michigan Court of Appeals rejected these claims. The Michigan Court of Appeals stated:

> Defendant's final argument on appeal is that he was denied the effective assistance of counsel when trial counsel did not allow him to review his pre-sentence investigation report (PSIR) before sentencing as required by MCR 6.425(E)(1). Defendant submits that had he seen his PSIR before sentencing, he would have alerted his attorney to alleged inaccuracies contained within it, specifically the false accusation that he raped his ex-wife and the embellished narrative concerning his fourth-degree criminal sexual conduct (CSC-4) conviction, which made the crime appear more severe.
>
> A defendant is entitled to be sentenced on the basis of accurate information and be given an opportunity to review his PSIR before sentencing. *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006).
>
> The record belies defendant's claim of ineffective assistance of counsel on this issue. Counsel indicated on the record at sentencing that he and defendant had reviewed the PSIR and the information contained therein was accurate. Defendant was afforded an opportunity to speak to the court. During that time, defendant did not indicate in any way that he was dissatisfied with the information contained in the PSIR. At the motion hearing, defense counsel affirmed that he had reviewed the PSIR with defendant prior to sentencing and the trial court found defense counsel's testimony to be credible. We give regard to the trial court's special opportunity to judge the credibility of the witnesses who appeared before it. See MCR 2.613(C); *Dendel, supra* at 130.

> In any event, there is no indication that the trial court relied on the allegedly inaccurate information in sentencing defendant. At the hearing on the motion for a new trial, the court stated that it did not consider defendant's ex-wife's accusation of rape in sentencing because it does not give weight to "uncharged allegations" by "disgruntled family members." Therefore, it cannot be said that, but for defense counsel's failure to challenge the information, defendant's sentence would have changed. *Yost*, *supra* at 387.

Michigan Court of Appeal's Opinion, docket #19, at 4.

In the opinion of the undersigned, it is clear that Petitioner cannot establish ineffective assistance of counsel on this issue. Moreover, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated: May 14, 2013